Filed 2/5/14  Dinaali v. Equity Title CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ALADDIN DINAALI,<br><br>      Plaintiff and Appellant,<br><br>   v.<br><br>EQUITY TITLE COMPANY et al.,<br><br>      Defendants and Respondents. | B241381<br><br>(Los Angeles County<br>Super. Ct. No. BC471612) |

APPEAL from a judgment and order of the Superior Court of Los Angeles County.  Michael Johnson, Judge.  Affirmed.

Aladdin Dinaali, in pro. per., for Plaintiff and Appellant.

Galfin, Passon & Greely and Kenneth D. Passon for Defendant and Respondent Equity Title Company.

Kousha Berokim for Defendants and Respondents Sogol Amjadi and Sassan Rostamipour.

Aladdin Dinaali (appellant) appeals from two separate rulings:  (1) a final judgment entered March 21, 2012, dismissing respondent Equity Title Company (Equity) from this lawsuit after the trial court sustained Equity's demurrer to the eighth cause of action for negligence, the only cause of action alleged against Equity, and awarded Equity its costs of suit; and (2) an order dated May 11, 2012, denying appellant's special motion to strike the cross-complaint filed by respondents Sogol Amjadi (Amjadi) and Sassan Rostamipour (Rostamipour) pursuant to Code of Civil Procedure section 425.16 (section 425.16 or "anti-SLAPP" statute).

We find no error in the trial court's rulings and affirm in full.

## CONTENTIONS

Appellant raises two issues regarding his claim against Equity:  that the trial court erroneously sustained Equity's demurrer to the eighth cause of action for negligence because Equity owes appellant a duty of care, and that Equity is not entitled to an award of costs because Equity never submitted its memorandum of costs to appellant as required by California Rules of Court, rule 3.1700.

Appellant also raises two issues regarding the denial of his anti-SLAPP motion: that the trial court erred in determining that his mass emails and websites concerning the private real estate dispute among the parties did not constitute protected speech, and that his appeal from the denial of his anti-SLAPP motion should have stayed all further proceedings in the trial court thus making the orders entered on June 7, 2012, June 19, 2012, and July 18, 2012 void.

## FACTUAL BACKGROUND[1]

This lawsuit involves events arising from Amjadi and Rostamipour's (buyers) purchase of a foreclosure property which was on the market for sale by ING Bank FSB (ING).  In July 2011, buyers entered into a purchase agreement for the subject real

---

[1]     This factual background is based on allegations taken from appellant's first amended complaint against ING Bank FSB, Amjadi, Rostamipour, Equity, and Does 1 through 20, inclusive, and Amjadi and Rostamipour's cross-complaint against appellant and Wells Fargo.

property, located on Colt Road, Rancho Palos Verdes, California. They applied for a mortgage loan through Wells Fargo Home Mortgage and Wells Fargo Bank, N.A. (Wells Fargo).

On July 7, 2011, appellant was contacted by Wells Fargo to perform a mandatory 203(k) loan consultation for Amjadi and Rostamipour as required by applicable Federal Housing Authority (FHA) rules and regulations. As a Department of Housing and Urban Development (HUD) inspector, appellant's role was to act as a liaison among the buyers, the contractors and the lender to ensure the construction process was in compliance with HUD guidelines. However, according to the allegations in Amjadi and Rostamipour's cross-complaint, Wells Fargo negligently failed to conduct a proper license status and background check on appellant before referring him to serve as the inspector on this job. The buyers allege that Wells Fargo referred appellant to them long after appellant's license became inactive.

The cost of the inspection to be performed by appellant was $250. The buyers agreed to hire appellant to perform the inspection for the stated price, and the agreement was memorialized in a written contract.

Appellant alleges he performed all conditions and covenants he was required to perform, and that the services, equipment and materials he furnished in connection with the job had a value of $1,050. In his first amended complaint, appellant alleges that Amjadi and Rostamipour breached the agreement to pay him. Amjadi and Rostamipour, on the other hand, allege that appellant unilaterally terminated the contract by email which read: "I hereby suspend all my FHA 203(k) consultation services for your project effective immediately due to non-compliance with FHA requirements."

The buyers allege that on July 16, 2011, they sent appellant a check for $250 even though appellant had not fully performed all the duties required for a HUD inspection. On the same date, appellant submitted a noncompliance report to HUD, accusing Amjadi and Rostamipour of criminal activity in violation of state and federal laws. In addition, appellant sent the buyers a preliminary 20-day notice indicating he was owed $1,050.

3

Thereafter, he sent a second invoice claiming to be owed $2,050 and a third invoice claiming to be owed $3,550.

Amjadi and Rostamipour allege that between July 14 and July 19, 2011, appellant sent numerous emails to Wells Fargo, ING, Coldwell Banker and the city threatening to take legal action if the property was sold to buyers.

On July 19, 2011, appellant sent an email to Amjadi: "I have your $250.00 check but I cannot accept it or deposit it because it has been voided." On July 27, 2011, appellant sent a second email to Amjadi saying that he realized he had not told her the check was void because she made it out to the wrong entity.

On July 18, 2011, appellant filed a mechanic's lien against the property with the Los Angeles County Recorder's Office, instrument No. 20110959505.

On July 20, 2011, appellant sent two other invoices to Amjadi and Rostamipour in the amounts of $950 and $4,700. In response, Amjadi and Rostamipour, through their attorney, asked appellant to provide documentation for charges beyond the contractual claim of $250. In an email dated July 19, 2011, appellant responded: "Go fuck yourself until I see you in court." The same day, appellant sent an email to various individuals involved in the real estate transaction, including Amjadi and Rostamipour, stating: "Get this ugly dumb ass monkey off my back or there is no way in the world I will release the lien until I am done with theses [*sic*] criminals."

Amjadi and Rostamipour further alleged that since July 19, 2011, appellant has sent over 200 mass e-mails "severely stalking, harassing, threatening and defaming" Amjadi and Rostamipour, their counsel, affiliates, and employers. In this correspondence, appellant accused Amjadi and Rostamipour of being criminals and thieves.

On October 17, 2011, appellant sent an email threatening to defame Rostamipour. Appellant listed six of Rostamipour's colleagues at UCLA and wrote, "I believe your colleagues listed below should know about your situation. Why don't you give them a heads up before I send them links to your website which will be updated shortly." On the same day, appellant sent an email to over 75 colleagues of Amjadi and Rostamipour with

4

a subject line of "UCLA White Collar Criminal," directing the recipients to a page that further detailed appellant's allegations of criminal activity.

Further, by email dated December 30, 2011, appellant threatened to jeopardize Rostamipour's employment with Genzyme Corporation. Appellant constructed websites disparaging Genzyme Corporation. Appellant further harassed and threatened Amjadi and Rostamipour by constructing 33 websites containing defamatory material aimed towards Amjadi and Rostamipour, their attorneys, affiliates and employers.

On January 3, 2012, appellant sent Amjadi and Rostamipour an email stating he would dismiss his case against them and return all their websites for $10,000.

Equity was employed as underwritten title company to perform ordinary and customary title services with regard to the purchase of the subject property.

## PROCEDURAL HISTORY

On October 14, 2011, appellant filed a complaint against ING, Amjadi, and Rostamipour for damages and foreclosure of mechanic's lien. Appellant's first amended complaint, filed December 9, 2011, added Equity as a defendant and added causes of action for breach of contract, foreclosure of mechanic's lien, breach of covenant of good faith and fair dealing, common counts, intentional interference with prospective economic relation, conspiracy to commit fraud and deceit, and negligence.

On January 4, 2012, Equity filed a demurrer to the eighth cause of action for negligence, the only cause of action asserted against Equity. On March 8, 2012, the court sustained Equity's demurrer, explaining that there were two problems with appellant's allegations of negligence against Equity: "[Appellant's] mechanic's lien was invalid, and [Civil Code section] 3143 is permissive rather than mandatory and exclusive. [Citation.]"[2] The court cited *In re J.N.* (2006) 138 Cal.App.4th 450, 457, footnote 4, in

---

[2] Former Civil Code section 3143 has been repealed. (Stats. 2010, ch. 697, § 16.) The statute has been restated in Civil Code section 8424, which provides that "An owner of real property or an owner of an interest in real property subject to a recorded claim of lien . . . that disputes the correctness or validity of the claim may obtain release of the property from the claim of lien by recording a lien release bond." In its current form, the statute remains permissive, not mandatory.

5

support of its decision. Appellant moved for reconsideration of the decision, and on May 11, 2012, the motion was denied.

On March 9, 2012, Equity filed a memorandum of costs seeking $395 for its first appearance fee. On March 21, 2012, a final judgment in favor of Equity was entered, and Equity was awarded its costs of suit in the amount of $395. Appellant did not move to tax costs.

On March 16, 2012, Amjadi and Rostamipour filed a cross-complaint against appellant for defamation, stalking, permanent injunction, negligence, implied indemnity, and comparative indemnity. Appellant filed a demurrer and an anti-SLAPP motion. On May 11, 2012, appellant's anti-SLAPP motion was denied on the ground that appellant failed to establish that the cross-complaint arose from protected activity. The court held that because the cross-complaint did not arise from protected activity, it was not necessary to discuss the second part of the analysis regarding Amjadi and Rostamipour's probability of success on the merits.

On May 15, 2012, appellant filed his notice of appeal from the orders dated March 21, 2012 and May 11, 2012.

## DISCUSSION

### I. Judgment in favor of Equity

Appellant first challenges the trial court's decision sustaining Equity's demurrer to his eighth cause of action for negligence.

#### A. *Standard of review*

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an

6

abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]" (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967.) The legal sufficiency of the complaint is reviewed de novo. (*Montclair Parkowners Assn. v. City of Montclair* (1999) 76 Cal.App.4th 784, 790.)

**B.  *Appellant has failed to show that the trial court erred in sustaining Equity's demurrer***

The trial court sustained Equity's demurrer for two reasons: the mechanic's lien that appellant filed against the property was invalid; and former Civil Code section 3143, which appellant relied upon in his claim against Equity, is permissive, not mandatory.

Appellant has failed to address these rulings. Instead, appellant argues that Equity owed him a duty of care to honor the mechanic's lien. In sum, appellant argues that he "relied on Equity to honor the Mechanic's Lien and let the buyers obtain a bond or settle the case with [him] as is the intent of the Mechanic's Lien."

By failing to address the bases for the court's ruling, appellant has waived any claims of error in connection with those specific findings. (*People v. JTH Tax, Inc.* (2013) 212 Cal.App.4th 1219, 1237.) An appealed-from order is presumed correct, and it is the appellant's burden to show error. (*Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545-546.) Appellant has failed to even address the trial court's rationale, much less show error. This court is not required to furnish a legal argument as to how the trial court's findings constituted error. (*Ibid.*) We therefore presume that the trial court's findings that (1) the mechanic's lien was invalid, and (2) former Civil Code section 3143 is permissive, not mandatory, are correct.

Appellant's argument concerning the duty of care is based on a faulty premise: it assumes that he held a valid mechanic's lien. Appellant does not address the trial court's finding that the lien was invalid, nor does he present any argument that a duty of care is owed in the case of an invalid lien. We therefore reject appellant's challenge to the trial court's decision sustaining Equity's demurrer.

7

### C. *Appellant forfeited his objections to the award of costs*

Appellant has forfeited his claim of error concerning the trial court's award of costs to Equity. Appellant did not file a motion to tax costs. Appellant now claims Equity never "submitted" its memorandum of costs to him, and that he did not have the chance to contest the costs. However, the record shows appellant was properly served by mail on March 9, 2012. Neither the issue of costs, nor the issue of inadequate service, was raised in appellant's motion for reconsideration of the trial court's ruling, filed on March 19, 2012, or at any other time throughout the relevant trial court proceedings.

An appellate court "'will ordinarily not consider procedural defects or erroneous rulings, in connection with relief sought or defenses asserted, where an objection could have been but was not presented to the lower court by some appropriate method.'" (*Royster v. Montanez* (1982) 134 Cal.App.3d 362, 367.)

## II. Anti-SLAPP ruling

Appellant further challenges the denial of his special motion to strike pursuant to the anti-SLAPP statute.

### A. *Applicable law and standard of review*

A special motion to strike under section 425.16, also known as the "anti-SLAPP" statute, allows a defendant to seek early dismissal of a lawsuit involving a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).) "SLAPP is an acronym for 'strategic lawsuit against public participation.'" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.)

Actions subject to dismissal under section 425.16 include those based on any of the following acts: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made

8

in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

"A SLAPP is subject to a special motion to strike 'unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.' (§ 425.16, subd. (b)(1).) Thus, evaluation of an anti-SLAPP motion requires a two-step process in the trial court. 'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one "arising from" protected activity. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim.' [Citations.]" (*Nygard, Inc. v. Uusi-Kerttula* (2008) 159 Cal.App.4th 1027, 1035 (*Nygard*).) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute -- i.e., that arises from protected speech or petitioning *and* lacks even minimal merit -- is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.)

"'Review of an order granting or denying a motion to strike under section 425.16 is de novo. [Citation.] We consider "the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) However, we neither "weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." [Citation.]' [Citations.]" (*Nygard, supra*, 159 Cal.App.4th at p. 1036.)

### B. *The cross-complaint did not arise from protected activity*

The threshold question in evaluating appellant's anti-SLAPP motion was whether Amjadi and Rostamipour's cross-complaint arose from protected activity. The trial court found it did not. In sum, the trial court concluded that appellant's websites and emails did not concern a matter of public importance, but a private real estate dispute between

9

appellant, Amjadi and Rostamipour.  The trial court noted "[t]he mere use of the internet and email does not transform a private dispute into a matter of public interest."

Appellant contends he made a prima facie showing that his conduct arose out of protected activity.  He claims his submission of a complaint to HUD, and having filed a mechanic's lien, qualify as protected activity under the anti-SLAPP statute.

First, as explained above, appellant has not properly challenged the trial court's ruling that his mechanic's lien was invalid.  Appellant may not rely upon his filing of an invalid lien to create an issue of public interest.

Furthermore, even if the case arguably involves protected activity associated with appellant's public filings, those public filings are not the main focus of the cross-complaint, which is instead based on the emails and websites that appellant published.  When a lawsuit involves both protected and unprotected activity, the court looks to the gravamen of the claims to determine if the case is a SLAPP.  (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 672 (*Peregrine*).)  Protected conduct which is merely incidental to the claims does not fall within the ambit of section 425.16.  (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 188; *Peregrine, supra*, at p. 672.)  Where the defendant's protected activity will only be used as evidence in the plaintiff's case, and none of the claims are based on it, the protected activity is only incidental to the claims.  (*Wang v. Wal-Mart Real Estate Business Trust* (2007) 153 Cal.App.4th 790, 809-810.)  Determining the gravamen of the claims requires examination of the specific acts of alleged wrongdoing and not just the form of the plaintiff's causes of action.  (*Peregrine, supra*, at pp. 671-673.)  In deciding whether the "arising from" requirement is met, a court considers "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based."  (§ 425.16, subd. (b).)

Applying this standard, we conclude that appellant's filing of the complaint with HUD, and his filing of the mechanic's lien, are merely incidental to the claims in the

10

cross-complaint, which are focused on the emails and websites that appellant published.[3] Thus, even if they could be considered valid, the two arguably public acts do not assist appellant in his burden of showing that the cross-complaint is subject to the anti-SLAPP statute.

Appellant further argues that his web activity is protected. He contends that the 33 websites he constructed are dedicated to a campaign for public awareness of real estate fraud. Web sites are considered to be public forums. (*Wong v. Jing* (2010) 189 Cal.App.4th 1354, 1366.) Appellant claims that his postings concerning real estate fraud are encompassed within the public interest provision of the anti-SLAPP statute, which is broadly construed and encompasses anything that is of interest to the public. (*Integrated Healthcare Holdings, Inc. v. Fitzgibbons* (2006) 140 Cal.App.4th 515, 523.)

The internet posting and emails that are the subject of the cross-complaint cannot legitimately be described as discussions of real estate fraud. Instead, they are personal attacks on Amjadi and Rostamipour. The cross-complaint describes an email sent by appellant to Amjadi's family, attorney, agents and others stating: "It looks like I could call you a streetwalker and no one has the balls to defend you." It also describes websites which describe Amjadi as "'an ignorant and corrupt Iranian'" and "'a white collar criminal.'" Other websites accuse Amjadi and Rostamipour of committing unlawful acts. The topic of each website is the single transaction which is the basis of this lawsuit and the private dispute between appellant and Amjadi and Rostamipour.

The question of what constitutes a matter of public interest was discussed in *Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122, where the court summarized "a few guiding principles" derived from decisional authorities. First, "'public interest' does not

---

[3]     For example, the cause of action for defamation references paragraphs 33-37 of the cross-complaint as a basis for the claim that appellant published defamatory material. Those paragraphs concern the emails and websites that appellant published. The allegation concerning the filing with HUD is found at paragraph 19 of the cross-complaint, and the allegation concerning the invalid mechanic's lien is found at paragraph 23 of the cross complaint. Thus, the gravamen of Amjadi and Rostamipour's defamation claim is the allegation concerning the disparaging emails and websites that appellant created -- not his public filings.

equate with mere curiosity." (*Id*. at p. 1132.) In addition, "a matter of public interest should be something of concern to a substantial number of people." (*Ibid.*) The assertion of a "broad and amorphous public interest is not sufficient," and the "focus of the speaker's conduct should be the public interest rather than a mere effort 'to gather ammunition for another round of [private] controversy.'" (*Id*. at pp. 1132-1133.) "'[T]hose charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure.'" And finally, "[a] person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people." (*Id*. at p. 1133.)

Thus, appellant's use of the internet and email does not transform this private dispute into a matter of public interest. Nor does his reference to the broad category of "real estate fraud" create a public interest where the subject matter of each publication is a single transaction. We therefore conclude that appellant has failed to establish that the cross-complaint arises from protected activity.

Because we have concluded that the cross-complaint does not arise from protected activity, we need not address the second prong of the analysis regarding the probability of success. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.)

### C. *Stay issue is not properly before us*

Finally, appellant challenges the trial court's orders issued on June 7, 2012, June 19, 2012, and July 18, 2012, arguing that the May 2012 filing of his notice of appeal in this matter should have stayed all trial court proceedings.

We decline to address issues arising out of proceedings that have taken place after the notice of appeal was filed. "'Our jurisdiction on appeal is limited in scope to the notice of appeal and the judgment or order appealed from.' [Citation.]" (*Soldate v. Fidelity National Financial, Inc.* (1998) 62 Cal.App.4th 1069, 1073.) Because the notice of appeal, filed May 15, 2012, does not reference the June and July 2012 orders, this

12

court has no jurisdiction to review the propriety of those orders. (*Norman I. Krug Real Estate Investments, Inc. v. Praszker* (1990) 220 Cal.App.3d 35, 46.)[4]

## DISPOSITION

The judgment and order are affirmed. Respondents are awarded costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
CHAVEZ

We concur:


_____, P. J.
BOREN


_____, J.
ASHMANN-GERST

---

[4]    In making this argument, appellant relies heavily on *Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180 (*Varian*). In *Varian,* the defendants in the underlying lawsuit, who lost an anti-SLAPP motion, filed an appeal as well as an ex parte application and a petition for writ of supersedeas with the Court of Appeal seeking to stay further proceedings. (*Id.* at pp. 187-188.) Both the application and petition were denied, and the matter proceeded to trial while the appeal of the anti-SLAPP motion was pending. After an unsuccessful appeal from the final judgment, the Supreme Court found that the trial court lacked subject matter jurisdiction over the matters on trial during the pendency of the anti-SLAPP appeal, and reversed the judgment in its entirety as void for lack of subject matter jurisdiction. (*Id.* at p. 200.) Thus in *Varian*, unlike here, the stay issue was properly presented to the higher courts.